| | |
|---|---|
| DARRYL F. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-CV-267-KAC-JEM |
| | ) |
| MILLENNIA HOUSING MANAGEMENT | ) |
| and AMY ADAMS, | ) |
| | ) |
| Defendants. | ) |

## ORDER & REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court on Plaintiff Darryl Thompson's amended[1] Application to Proceed In Forma Pauperis with Supporting Documentation ("Application") [Doc. 6] and pro se Complaint [Doc. 1]. For the reasons more fully stated below, the undersigned **GRANTS** Plaintiff's amended Application to Proceed In Forma Pauperis with Supporting Documentation [**Doc. 6**]. Plaintiff shall be allowed to file the Complaint without prepayment of costs. The Clerk shall not, however, issue process at this time because the undersigned **RECOMMENDS** that the District Judge: (1) **DISMISS** Plaintiff's claims under the Americans with Disabilities Act, the Housing and Urban Development regulations, the "Terrorist Act," the National Environmental Policy Act,[2] and 42 U.S.C. § 1983 as to both Defendant Adams and Defendant Millennia Housing; (2) allow Plaintiff's reasonable

---

[1] Plaintiff did not sign his original Application to Proceed in Forma Pauperis with Supporting Documentation [Doc. 2], so the undersigned ordered Plaintiff to file a signed application within fourteen days [Doc. 4]. Plaintiff then filed the amended Application to Proceed in Forma Pauperis with Supporting Document [Doc. 6], which included Plaintiff's signature, within the time allowed. Thus, the Court **DENIES AS MOOT** Plaintiff's former Application [**Doc. 2**].

[2] As explained below, Plaintiff alleges violations of "EPA." The Court will construe Plaintiff's pleading as alleging violations of the National Environmental Policy Act ("NEPA").

accommodation claim under the Fair Housing Act to proceed past the screening stage against Defendant Adams and Defendant Millennia Housing; (3) allow Plaintiff's reasonable accommodation claim under the Rehabilitation Act to proceed past the screening stage as to Defendant Millennia Housing; (4) **DISMISS** Plaintiff's Rehabilitation Act claim against Defendant Adams; and (5) **DISMISS** all claims against the Maintenance Crew.

## I. DETERMINATION ABOUT THE FILING FEE

Plaintiff has filed an amended Application [Doc. 6] with the required detailing of his financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The Court's review of an in forma pauperis application is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed in forma pauperis, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed in forma pauperis is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id*. at 339.

The Court finds the Application is sufficient to demonstrate that Plaintiff has little income and few assets. Considering Plaintiff's Application, it appears to the Court that Plaintiff's economic status is such that he cannot afford to pay for the costs of litigation and still pay for the necessities of life. Accordingly, the Court **GRANTS** Plaintiff's amended Application [**Doc. 6**].

The Court **DIRECTS** the Clerk to file the Complaint in this case without prepayment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

II.     RECOMMENDATION AFTER SCREENING OF COMPLAINT

Under 28 U.S.C. § 1915(e)(2)(B)(i)–(iii), the Court must dismiss an in forma pauperis action if it determines the action "is frivolous or malicious;" "fails to state a claim on which relief may be granted;" or "seeks monetary relief against a defendant who is immune from such relief." *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial screening, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. The Supreme Court has instructed, however, that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

A.     **Factual Allegations**

Plaintiff leases an apartment owned by Defendant Millennia Housing Management ("Millennia Housing") [Doc. 1 p. 1; Doc. 14 p. 9]. In his Complaint and subsequent filings,

3

Plaintiff cites a myriad of issues with his apartment that he has brought to the attention of Defendants Millennia Housing and its property manager, Amy Adams,[3] including: (1) "toxic" carpet [Doc. 1 p. 1; Doc. 8 p. 3]; (2) various issues with his kitchen, including a broken stove, garbage disposal,[4] and cabinet drawers [Doc. 1 pp. 2–3]; (3) broken window blinds [*Id.* at 3]; (4) a faulty support beam [*Id.* at 2]; (5) an air conditioner that blows out mold [*Id.* at 3]; (6) closet shelving that has fallen down [Doc. 8 p. 4]; (7) a toilet that must be flushed multiple times [*Id.*]; (8) a broken mailbox [Doc. 14 p. 2]; (9) a kitchen light that is no longer working [Doc. 11 p. 3]; and (10) walls that leak when it rains [*Id.*].[5] Plaintiff states that, despite bringing all of these issues to Defendants' attention, the issues either have never been fixed or have only been fixed after several months—and even then, problems remain with the repairs that have been done. Plaintiff states that Defendants' failure to repair his apartment has created a "toxic," "hostile," and "stress[ful]" environment and has caused him "physical sickness" [Doc. 1 p. 3].

As it relates to his health, Plaintiff states that he has prostate cancer and diabetes [*Id.* at 1]. Plaintiff alleges that since all of this began, he has "been sick" and his "[blood]sugar is getting worse because of the carpet" [Doc. 8 p. 6]. He further states that his carpet has a "toxic smell," has "cause[d] a sore to develop," has "ate a hole in [his] foot," has caused him to lose weight, and is otherwise "so toxic that when [he] walk[s] it stick[s] to the bottom of [his] foot" [Doc. 10 p. 6].

---

[3] Plaintiff lists "Maintenance Crew" as "additional defendants" in one of his later filings [Doc. 8 p. 3]. Plaintiff's filings, however, do not reference any actions taken by such crew members. The undersigned therefore recommends that the District Judge **DISMISS** any claims against the "Maintenance Crew" for failure to state a claim.

[4] Plaintiff relates that since the garbage disposal is broken, he has had to wash his dishes in the bathroom tub, then clean the tub so that he can bathe [Doc. 1 p. 2].

[5] Plaintiff further states that at the time he brought his lawsuit, all service to his apartment had been cut [Doc. 1 p. 1].

Plaintiff goes on to state that "[y]ou can see the glue coming up [from the carpet]" and his "sugar ran up to 1.800 and [he had a] black out from seizure" causing him to "fall out in front of the elevator" [Doc. 14 p. 3]. He also says that Defendant Adams "know[s] I'm sick" [Doc. 8 p. 6].[6]

In response, Defendant Adams has "insist[ed]" Plaintiff "shampoo the carpets" [*Id.*]. Plaintiff is concerned, however, that Adams wants the carpets shampooed "so she can pocket some money for herself," especially since "there [is] no carpet to shampoo so if [he] did shampoo [the] money [would] go . . . in her pocket" [Doc. 13 p. 11].

### B. Claims

In his initial Complaint, Plaintiff claimed that Defendants' failure to remedy the issues with his apartment violates the Americans with Disabilities Act, "HUD, government standard living code," and the Civil Rights Act [Doc. 1 p. 3]. In his later filings, Plaintiff clarifies that his Civil Rights Act claim is being brought under 42 U.S.C. § 3604(F)(3)(B) as a Fair Housing Act claim

---

[6] Along with his own health impairments, Plaintiff's initial Complaint cites to health issues suffered by another individual associated with Plaintiff—the undersigned is unable to discern the identity of that individual based on Plaintiff's handwriting, whether it be a friend, fiancé, or daughter. Plaintiff states that this individual "suffer[s] from seizure[s]" that cause her to have "blackout epilepsy at any moment" and that she "can have 50 seizures in one day" [Doc. 1 p. 2]. Plaintiff avers that this individual has been "harasse[d] by Amy Adams" and that he and this other individual have to clean Plaintiff's dishes in the bathroom [*Id.*].

To the extent Plaintiff raises any claims on behalf of this individual, Plaintiff has failed to state a claim because, in addition to being unable to bring a claim under the ADA, HUD regulations, "Terrorist Act", or "EPA" for the reasons stated below, Plaintiff has failed to allege facts that would indicate Defendants knew or should have known of this individual's disability as required for claims under the FHA and Rehabilitation Act. *See Kooman v. Boulder Bluff Condos.*, 833 F. App'x 623, 630 (6th Cir. 2020) (denying a resident's FHA disparate treatment claim, in part, because the condominium association did know of the plaintiff's disability); *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) (requiring that the defendant knew or should have known of the disability at the time of the refusal to proceed on an FHA reasonable accommodation claim); *Hale v. Johnson*, 245 F. Supp. 3d 979, 988 (E.D. Tenn. 2017) (requiring as an element of a Rehabilitation Act reasonable accommodation claim that "the [defendant] knew or had reason to know of plaintiff's disability").

[Doc. 10 p. 4]. In these later filings, Plaintiff also adds claims under "Section 504" of the Rehabilitation Act, the "EPA" and the "Terrorist Act" [*Id.* at 2; Doc. 8 p. 6]. In all, Plaintiff has raised claims under: (1) the Americans with Disabilities Act ("ADA"); (2) Department of Housing and Urban Development ("HUD") regulations; (3) Section 3604(F)(3)(B) of the Fair Housing Act ("FHA"); (4) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (5) the National Environmental Policy Act ("NEPA") and (6) the "Terrorist Act."[7] For the reasons discussed below, the undersigned recommends the District Judge dismiss Plaintiff's claims under the ADA, the HUD Regulations, the "Terrorist Act," NEPA, and § 1983 but allow the FHA claim to proceed against both Defendants and allow the Rehabilitation Act claim to proceed against Defendant Millennia Housing.

   1.   **ADA Claim**

Plaintiff first claims that Defendants' failure to repair the issues with his apartment violates his rights under the ADA. Specifically, Plaintiff asserts that under the "ADA when a tenant ha[s] a problem with [his] apartment [and] reports to manager, [then] within (14 day[s]) [his] request should be repaired or replace[d]" [Doc. 1 p. 2]. Contrary to Plaintiff's assertion, the ADA does not create an enforceable cause of action against either Defendant Millennia Housing, as a residential housing facility, or Defendant Adams, as an individual.

"[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (footnotes

---

[7] Plaintiff's later filings are on the standard form for civil rights claims brought under 42 U.S.C. § 1983. The Court, therefore, addresses whether Plaintiff has stated a claim under § 1983 in addition to these six stated claims.

omitted). As explained below, Plaintiff has not stated a claim against Defendant Millennia Housing under any title of the ADA.

Title I of the Act regarding employment is inapplicable here. There are no allegations Plaintiff was employed by Defendants.

Title II regarding public services states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" is defined for purposes of Title II as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." *Id.* § 12131. Based on Plaintiff's allegations, Defendant Millennia Housing, a residential housing facility, is not a "public entity" for purposes of Title II under any of the three definitions provided for in § 12131 and, thus, could not be subject to liability under Title II. *See Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *7–8 (E.D. Mich. Oct. 15, 2008), *aff'd sub nom.*, *Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009) (finding residential facility was "not a public entity subject to liability under Title II").

Title III provides, in pertinent part, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A "public accommodation" for purposes of Title III is a "facility, operated by a private entity, whose operations affect commerce and fall within at least one" of twelve categories, including "(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the

7

proprietor of such establishment as the residence of such proprietor." *Id.* § 12181(7). Defendant Millennia Housing is not a "public accommodation" for purposes of Title III, as "[f]ederal courts have consistently determined that residential condominiums and apartments are not 'public accommodations.'" *Sutton*, 2008 WL 4601372, at *7 (collecting cases); *see also Collins v. PRG Real Estate*, No. 17-5534, 2018 WL 2166214, at *2 (6th Cir. Apr. 4, 2018) ("At least one federal circuit and several federal district courts have observed that residential facilities do not qualify as 'public accommodations' for purposes of the ADA." (citations omitted)).

As for Defendant Adams, "[t]he ADA . . . [does not] impose liability upon individuals." *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th 2004).[8] This means that Plaintiff cannot state a claim against Defendant Adams under the ADA.

For these reasons, the undersigned recommends the District Judge dismiss Plaintiff's ADA claim against both Defendants.

### 2. HUD Rules

Plaintiff claims that Defendants' failure to address the issues in his residence also violated "HUD list of rules" and "HUD, Government Standard Living Code" [Doc. 1 p. 3]. Plaintiff fails to specify, however, which of HUD's "rules" and "living code" provisions Defendants violated or whether such rules and code provisions refer to the federal statutes that govern HUD or the regulations promulgated by HUD. Regardless, neither the statutes governing HUD nor the regulations HUD promulgates provide individual tenants a right to sue. *See Lewis v. Wheatley*, 528 F. App'x 466, 467–68 (6th Cir. 2013) (affirming dismissal of tenants' claims "that they suffered from health problems stemming from the presence of mold and microbiological contaminants in their apartment" because § 1437 was "merely a policy statement" and § 1437

---

[8] Further, there are no allegations that Defendant Adams owns, leases (or leases to), or operates a place of public accommodation as required by Title III. 42 U.S.C. § 12182(a).

8

otherwise "bel[ayed] any intent to create rights enforceable by individual tenants" (citations omitted)); *Johnson v. City of Detroit*, 446 F.3d 614, 627 (6th Cir. 2006) (finding that neither 42 U.S.C. §§ 1437 and 1437f, which govern HUD and provide for "decent, safe, and sanitary housing," nor the regulations HUD promulgates based on these statutory provisions "create rights enforceable by individual tenants"); *Baldridge v. Indep. Apartments*, No. 16-2292-JDT-dkv, No. 16-2294-JDT-dkv, 2016 WL 11479289 (W.D. Tenn. July 6, 2016) (collecting cases that find no private cause of action exists for "safe and hospital housing" under §§ 3147 and 3147f). The undersigned therefore recommends the District Judge dismiss any claims arising from the "HUD list of rules" or "HUD, Government Standard Living Code."

### 3. Fair Housing Act Claim

Plaintiff next claims that Defendants' failure to adequately address the issues with his apartment violates his rights under the Fair Housing Act ("FHA"), specifically, 42 U.S.C. § 3604(f)(3)(B) [Doc. 10 p. 4]. "Under the FHA, it is unlawful for a housing provider to refuse to make a reasonable accommodation in rules, policies, practices or services, when the accommodation is necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling." *McDonald v. Madison Flats*, No. 3:21-cv-931, 2021 WL 6118671, at *2 (M.D. Tenn. Dec. 27, 2021) (citing 42 U.S.C. § 3604(f)(3)(B)). To proceed on an FHA reasonable accommodation claim, a plaintiff must allege that "she suffers from a disability, that she requested an accommodation or modification, that the defendant housing provider refused to make the accommodation or to permit the modification, and that the defendant knew or should have known of the disability at the time of the refusal." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014). The plaintiff must also allege "both the reasonableness and necessity of the requested modification." *Id.*

9

Plaintiff has alleged that he is disabled [*see* Doc. 1 p. 1 (citing his "prostate cancer" and "diabetes")], that he requested accommodations [*see id.* (stating "for 4 year[s] I ask Manager to repair or replace my carpet" and other items in the residence)], and that Defendants denied his requests [*see id.* at 2 (stating Defendants "refuse to repair my apartment turning it into a toxic environment")]. Plaintiff has also alleged that at the time of the refusal, Defendant Adams knew he was sick [Doc. 8 p. 6].[9]

The two remaining elements assess whether Plaintiff's requested accommodations—that Defendants replace his "toxic" carpet and make other repairs to his residence—are "reasonable" and "necessary." Whether an accommodation is reasonable "is a highly fact-specific inquiry" that requires the court to weigh "the burden that the requested modification would impose on the defendant . . . against the benefits that would accrue to the plaintiff." *Hollis*, 760 F.3d at 542 (internal quotations omitted). An accommodation is "necessary" if it "ameliorat[es] the effects of the [plaintiff's] disability." *Phillips v. Acacia on the Green Condo. Ass'n*, No. 20-4182, 2022 WL 1692948, at *2 (6th Cir. May 26, 2022) (stating the FHA "requires accommodations that are necessary for a disabled person to use and enjoy a home as a non-disabled person could, not merely accommodations that are necessary for a disabled person to live or remain in a home").

Because it can be inferred from the Complaint that replacing the carpet would alleviate his diabetes symptoms, including the sores that develop on his feet, and allow him to walk around

---

[9] While Plaintiff's statement may not be sufficient, on its own, to establish Defendants' knowledge of his disability at a later stage in the proceedings, *see Kooman v. Boulder Bluff Condos.*, 833 F. App'x 623, 628 (6th Cir. 2020) (dismissing the plaintiff's claim at the summary judgment stage, in part, because plaintiff failed to establish defendants knew the plaintiff had a disability when they received an email that the plaintiff was "'feeble, in 'bad health,' 'not very well balanced on his legs,' and he had fallen"), at the screening stage, when the Court construes Plaintiff's pro se Complaint liberally, the undersigned finds Plaintiff's statement that Defendant Adams knew he was "sick" sufficient.

better [Doc 8 p. 6; Doc. 10 p. 6],[10] at this stage, the undersigned finds that Plaintiff has alleged the requested accommodation was reasonable.  Further, considering his allegations that the toxic carpet made his blood sugar worse, caused "holes" and sores to develop on his feet, and made it difficult to walk [*Id.*],[11] and construing the pleadings liberally, Plaintiff appears to be alleging that the poor condition of his carpet is causing the effects of his disability to worsen. Specifically, the carpet is causing sores to develop on his feet in such a way that it makes it difficult to walk.  At this stage, the undersigned presumes such an injury, if left unredressed, could "prevent [Plaintiff] from receiving the same enjoyment form [his] property as a non-disabled person would receive," *Hollis*, 760 F.3d at 541, in that Plaintiff would be precluded from walking around his apartment whereas other, non-disabled, individuals—specifically, non-diabetic individuals—may not develop sores as a result of the same "toxic" carpet and, therefore, are not precluded from walking around under the same conditions.  On the other hand, if the carpet were removed then, at least plausibly, it could "redress," or "ameliorate" the effects of [Plaintiff's] disability.[12]

---

[10]  Plaintiff's most recent filing contains a document titled "Inpatient Discharge Instructions" that lists his diagnoses as "[c]ellulitis of right foot"; "[d]iabetes mellitus with neuropathy"; "[e]levated alkaline phosphatase level"; "[h]ypertension"' and "[p]atient's noncompliance with other medical treatment and regimen for other reasons" [Doc. 16 p. 3].

[11]  *See supra* note 10.

[12]  A plaintiff's requested accommodation is not "necessary," however, when the defendant offered other reasonable accommodations that would ameliorate a plaintiff's disabilities and the plaintiff refuses such accommodations. *See Phillips*, 2022 WL 1692948, at *3 ("[I]f a housing provider's offered alternative accommodation provides a disabled person with an equal opportunity to use and enjoy his or her dwelling, then the housing provider need not also grant the requested accommodation." (citation omitted)).  At one point in his filings, Plaintiff states that Defendant Adams "insist me to shampoo the carpets so she can pocket some money for herself" [Doc. 8 p. 6].  At another point, he states, "Amy Adams wanted to shampoo [the carpet]," but "there [is] no carpet to shampoo so if did shampoo money [would] go . . . in her pocket" [Doc. 13 p. 11].  While Defendant Adams's offer may preclude relief at later stages of these proceedings, such statements as alleged do not establish at the screening stage that Defendants offered Plaintiff a sufficient alternative accommodation.

Accordingly, the undersigned recommends the District Judge allow Plaintiff's reasonable accommodation claim to proceeding past the screening stage as to both Defendant Millennia Housing and Defendant Adams. *See Meyer v. Holley*, 537 U.S. 280, 286 (2003) (explaining that the FHA imposes liability on individuals (citation omitted)).

### 4. Rehabilitation Act Claim

Plaintiff argues Defendants' failure to fix the issues with his apartment also violates Section 504 of the Rehabilitation Act of 1973, which provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

As an initial matter, the undersigned recommends the District Judge dismiss the Rehabilitation Act claims against Defendant Adams in her individual capacity. Under the statute, a defendant for purposes of the Rehabilitation Act must be a "program or activity receiving Federal financial assistance." *See id.* Individuals named in their personal capacity do not meet this definition. *See Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) ("[The plaintiff] may not maintain an action under the [Rehabilitation Act] against the individuals identified in his complaint because the [Act] does not impose liability upon individuals." (citing 29 U.S.C. § 794(b) (defining "program or activity" for purposes of the Rehabilitation Act))); *Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*, No. 3:12CV00187, 2012 WL 3808902, at *1, *4 (N.D. Ohio Aug. 8, 2012) (rejecting the plaintiff's Rehabilitation Act claim against a school district "Director of Special Education and Special Services" because "[he] is neither a 'program' nor a recipient of federal aid, and thus plaintiff cannot advance a § 504 claim against him").

Recipients of HUD Section 8 funding, however, are presumed to be qualifying defendants for purposes of the Act. *See Forest City Residential Mgmt., Inc. v. Beasley*, 71 F. Supp. 3d 715,

12

731 (E.D. Mich. 2014) (stating "[i]t appears undisputed that Plaintiff[, who is a recipient of Section 8 funding], is a recipient of federal funds and, thus, subject to the Rehabilitation Act's requirements"). In this case, one of the letters Defendant Millennia Housing sent to Plaintiff, which Plaintiff filed as part of this case, includes a disclosure with the contact information for a Millennia Housing employee "designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing and Urban Development's regulations implementing Section 504 (24 CFR, part 8 dated June 2, 1988)" [Doc. 14 p. 15]. For purposes of screening, the undersigned finds this disclaimer sufficient to assume that Defendant Millennia Housing is a qualifying program receiving Federal financial assistance.

Plaintiff cites Section 504 in the context of asserting that Defendant Millennia Housing denied his requests for repairs. Under the Rehabilitation Act, a plaintiff may proceed under a reasonable accommodation theory. While "[t]he Rehabilitation Act does not contain an explicit accommodation requirement," the Act's "implementing regulations [] do set forth such a requirement." *Tri-Cities Holdings LLC v. Tenn. Admin. Proc. Div.*, 260 F. Supp. 3d 913, 925 n.7 (E.D. Tenn. 2017) (citing *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); 28 C.F.R. § 41.53). The regulation states, "[a] recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 28 C.F.R. § 41.53.

"A failure to accommodate claim under any of these statutes [ADA, FHA, and Rehabilitation Act] requires the following allegations: (1) a disability; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate the disability." *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *8 (N.D. Ind.

May 18, 2012) (citation omitted), *aff'd sub nom. A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend, Ind.*, 498 F. App'x 620 (7th Cir. 2012).

Here, for the same reasons as explained above for Plaintiff's reasonable accommodation claim under the FHA, the Court recommends that his Rehabilitation Act claim survives the screening phase. *Funyak v. Pennrose Mgmt. Co.*, No. 2:19-CV-01331-CCW, 2021 WL 3080142, at *3 (W.D. Pa. July 21, 2021) ("Since the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes." (quoting *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019))).

### 5. "EPA" and "Terrorist Act" Claims

Plaintiff's later filings raise claims under the "EPA" and "Terrorist Act" based on Defendants' failure to fix the issues with his residence [Doc 8 p. 6; Doc. 10 p. 2]. But the Court cannot discern which federal statutes Plaintiff relies upon. At best, Plaintiff may be seeking to file a claim under the National Environmental Policy Act ("NEPA").[13] Plaintiff, however, cannot bring a claim under the NEPA because "NEPA does not authorize a private right of action." *Friends of Tims Ford v. TVA*, 585 F.3d 955, 965 (6th Cir. 2009) (finding the Administrative Procedure Act permits judicial review of challenges under the NEPA that arise from final agency action). The undersigned therefore recommends the District Judge dismiss Plaintiff's EPA and Terrorist Act claims against both Defendant Adams and Defendant Millennia Housing.

### 6. Section 1983 Claim

---

[13] Plaintiff could also mean the Equal Pay Act, but he does not include factual allegations that would support such a claim.

In his later filings, Plaintiff uses the standard form for filing a civil rights complaint under 42 U.S.C. § 1983 [Doc. 8]. To succeed on a § 1983 claim requires a plaintiff must allege both "that a defendant acted under color of state law" and that "the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012). Plaintiff has failed to allege facts that would indicate Defendants—a residential housing company and an employee of that company—were acting "under color of state law." *See Benford v. Smith*, No. 1:04-CV-337, 2005 WL 1325003, at *4 (E.D. Tenn. June 3, 2005) (finding private owner and landlord of residence were not acting under color of state law even though he received Section 8 funds). Thus, to the extent Plaintiff raises a § 1983 claim, he has failed to allege a necessary element of the claim, and the undersigned recommends the District Judge dismiss any § 1983 claim as to both Defendant Adams and Defendant Millennia Housing.

C. **Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides, "The court should freely give leave [to amend] when justice so requires." "Generally, if it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (internal quotations omitted). The undersigned has therefore considered whether it should grant Plaintiff leave to amend his Complaint. Plaintiff has already filed many letters and supplements to his Complaint [Docs. 1 and 7–16] that the undersigned has taken into consideration. Even if leave to amend were granted, Plaintiff would be unable to cure the defects described above, and it seems that any further amendment for additional factual support for his claims would be futile.

III. **CONCLUSION**

For the reasons set forth above, the Court **DENIES AS MOOT** Plaintiff's original Application to Proceed in District Court Without Prepaying Fees or Costs [**Doc. 2**] and **GRANTS**

15

Plaintiff's amended Application to Proceed in District Court Without Prepaying Fees or Costs [**Doc. 6**]. However, no process shall issue until the District Judge has ruled upon this Report and Recommendation.[14] The undersigned **RECOMMENDS**[15] that the District Judge: (1) **DISMISS** Plaintiff's claims under the ADA, HUD Regulations, "Terrorist Act," NEPA, and § 1983 as to both Defendant Adams and Defendant Millennia Housing; (2) allow Plaintiff's reasonable accommodation claim under the FHA to proceed past the screening stage against Defendant Adams and Defendant Millennia Housing; (3) allow Plaintiff's reasonable accommodation claim under the Rehabilitation Act to proceed past the screening stage as to Defendant Millennia Housing; (4) **DISMISS** Plaintiff's Rehabilitation Act claim against Defendant Adams; and (5) **DISMISS** all claims against the Maintenance Crew.

                                      Respectfully submitted,

                                      */s/ Jill E. McCook*
                                      Jill E. McCook
                                      United States Magistrate Judge

---

[14] This matter is to be presented to the assigned district judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[15] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).